**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | CIVIL ACTION NO. |
| | ) | 1:23-CV-03792-SCJ |
| | ) | |
| v. | ) | |
| | ) | RE: NOTICE OF REMOVAL |
| | ) | OF FULTON COUNTY |
| | ) | SUPERIOR COURT |
| SHAWN MICAH TRESHER STILL, | ) | INDICTMENT NO. |
| | ) | 23SC188947 |
| Defendant. | ) | |

**STATE OF GEORGIA'S RESPONSE**
**TO DEFENDANT SHAWN STILL'S NOTICE OF REMOVAL**

Defendant Shawn Micah Thresher Still has asked this Court to remove his

criminal case from the Superior Court of Fulton County to the Northern District of

Georgia based on the improbable theory that he—a private citizen with no federal

role, acting at the direction of the losing Trump presidential campaign—is entitled

to removal as a "federal official" within the meaning of 28 U.S.C. § 1442(a)(1).

Yet he fails to clear even the initial hurdle—establishing that he at any time met

the definition of "federal official."  Defendant and his fellow fraudulent electors

conspired in a scheme to impersonate true Georgia presidential electors; their

fiction is not entitled to recognition by this Court.  Because he cannot meet any of

the requirements to achieve removal, the State of Georgia respectfully requests that this Court remand the case to the Superior Court of Fulton County.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. The Election and Certification of Presidential Electors

On Tuesday, November 3, 2020, the State of Georgia joined the rest of the United States in holding an election for—among other federal, state, and local offices—the President of the United States.  As chief election official, the task fell to Georgia Secretary of State Brad Raffensperger to certify the votes cast for all presidential candidates "not later than 5:00 P.M. on the seventeenth day following the date on which such election was conducted."  O.C.G.A. §§ 21-2-50(b), 20-2-499(b).  Georgia law further requires that the Governor "certify the slates of presidential electors receiving the highest number of votes . . . no later than 5:00 P.M. on the eighteenth day following the date on which such election was conducted."  O.C.G.A. § 20-2-499(b).  Both Governor Kemp and Secretary Raffensperger performed these duties in a timely manner, with Governor Kemp certifying on November 20, 2020 that the Democratic slate of electors had prevailed and appointing that group as the official Georgia slate of presidential electors. Ex. 1 (Nov. 20, 2020 Certification). This certification came after both the initial counting of ballots and a statewide hand count ordered by the Secretary

of State revealed that President Biden had prevailed by more than ten thousand votes.

The Trump campaign requested a recount as contemplated by O.C.G.A. § 21-2-495(c)(1) (permitting recount where the margin of victory is less than one-half of one percent). The results of that recount, the third counting of ballots for Georgia's presidential election, demonstrated a margin of 11,779 votes in favor of President Biden. Ex. 2 (Secretary of State Certification of Recount). Governor Kemp again certified the results on December 7, 2020, alerting the National Archives and Records Administration that the State of Georgia had appointed the Democratic slate Electors of the President and Vice President for the State of Georgia. Ex. 3 (December 7, 2020 Certification).

## B. The Fraudulent Elector Scheme

Despite the now obvious and repeatedly confirmed fact that then-President Trump had lost the presidential election in Georgia, and the fact that the Republican-nominated slate of electors were never appointed by the State of Georgia to vote in the Electoral College proceeding, Defendant and the other representatives of the losing campaign chose to pretend otherwise. The group mimicked the actions of the genuine Democratic slate of electors by meeting on December 14, 2020 at the State Capital. [Doc. 1-4] (Defendant acknowledging the

group met at the Capital building).  Co-defendant David Shafer and Defendant

presented themselves as "Chairman" and "Secretary" of the proceedings,

respectively, falsely certifying the group were the "duly elected and qualified

Electors for President and Vice President of the United States from the State of

Georgia," and purporting to give Georgia's 16 Electoral College votes to Trump:

**CERTIFICATE OF THE VOTES OF THE**
**2020 ELECTORS FROM GEORGIA**

**\*\*\*\*\*\*\*\*\*\***

WE, THE UNDERSIGNED, being the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Georgia, do hereby certify the following:

(A) That we convened and organized at the State Capitol, in the City of Atlanta, County of Fulton, Georgia, at 12:00 noon on the 14th day of December, 2020, to perform the duties enjoined upon us;

(B) That David J. Shafer presided and Shawn Still served as Secretary for the meeting.

(C) That the undersigned 2020 Electors from the State of Georgia cast each of their respective ballots for President of the United States of America, as follows:

**FOR DONALD J. TRUMP – 16 VOTES**

Ex. 4 (Fraudulent Elector Certificate).

While Defendant goes to great lengths to describe himself and his fellow

nominee electors as "contingent," a careful review of the certificate they signed

reveals no such qualification.  *Id.*  "Contingent electors" are not presidential

electors, there is no prize for first runner up in the Electoral College.  Either the

contingency is met, and the "contingent electors" become actual presidential

electors, or—as was the case here—the contingency never arises and the losing candidate's slate of electors plays no role.

Of course, this group of sham electors was anything but duly elected or qualified.  Nevertheless, Defendant and his fellow conspirators then caused the false certificate to be sent to the President of the Senate, the Archives of the United States, the Georgia Secretary of State, and the Chief Judge of the Northern District of Georgia, as would be appropriate if the false slate of electors had been genuine. *Id*.  As alleged in the indictment, Defendant Still and his co-defendants were part of a conspiracy to subvert the electoral process.  [Doc. 1-1], 30-32 (detailing scheme to have Trump elector nominees attempt to cast electoral votes in Georgia, Arizona, Michigan, Nevada, Pennsylvania, and Wisconsin, despite Trump's loss in each of those states).

 As a result of these actions, Defendant and several co-defendants face charges brought in Fulton County Superior Court related to the scheme, including Violation of the Georgia RICO Act (O.C.G.A. §16-14-4), Impersonating a Public Officer (O.C.G.A. § 16-10-23), two counts of Forgery in the First Degree (O.C.G.A. § 16-9-1), two counts of False Statements (O.C.G.A. §16-10-20), and Criminal Attempt to File False Documents (O.C.G.A. § 16-4-1 and 16-10-20.1).

[Doc. 1-1] (Cts. 1, 8, 10, 12, 14, 16, 18).  It is this pending criminal action that Defendant Still seeks to have removed to this Court.

### C. Defendant Has Never Held Federal Office, Nor Did He Coordinate His Actions With Any Federal Official

In December 2020, at the time of the acts alleged in the indictment, Defendant was a private citizen with no federal employment or office.  The State does not contest the representation that Defendant worked in his family's pool construction business and owned a small rafting company, and that he held no federal employment or federal elected office in December 2020.  [Doc. 1], 2.

Despite that, Defendant Still insists to this Court that he was in fact a "federal official" within the meaning of 28 U.S.C. § 1442(a)(1) (providing for federal jurisdiction over "any officer (or any person acting under that officer) of the United States" for "any act under color of such office" ), or alternatively, that he was "acting under" a federal official (namely, then-President Trump).  [Doc. 1], 7-9.  Defendant does not address the facts that undermine that claim, including:

- Still and the other Republican nominees were not genuine presidential electors, they were **impersonating** presidential electors by signing a certificate stating they were duly elected and certified when they had not been;

- Governor Kemp had certified on December 7, 2020, that the Democratic slate of presidential electors would represent Georgia, with Republican nominees having no role in the counting of presidential electors;

- By December 14, 2020, there was no recount pending in Georgia nor was there any official proceeding that could have potentially resulted in the "flipping" of Democratic presidential electors to be substituted with the Republican presidential nominees[1];

- Under Defendant's telling, he took direction only from the Trump campaign and Candidate Trump's personal attorneys to further campaign goals, not any federal official carrying out a federal function, *see* [Doc. 1], 9 ("The President's attorneys instructed Mr. Still and the other contingent electors that they had to meet and cast their ballots on December 14, 2020, in order to preserve the presidential election contest."); [Doc. 1-3], 21 (Defendant taking direction from state Republican party attorney, co-defendant Shafer and Trump campaign attorney), 24 (same);

- Defendant Still testified that the fraudulent certificate was not given to any state or federal official, but instead to Trump campaign operative Robert Sinners to send to the National Archives, [Doc. 1-3], 26;

- Defendant never received direction from or had communication with any federal official about the fraudulent elector scheme, including then-President Trump, *id*. at 35 ("**I've never spoken to anybody from the White House**." (emphasis added)), 21 (explaining that lawyers for campaign and state Republican party advised him on fraudulent elector process), 24 (spoke with [Trump campaign official] Robert Sinners and [Georgia Republican Party chair and co-defendant] David Shafer about fraudulent elector meeting).

---

[1]     The State notes that even if the Trump campaign's election contest brought in Fulton County Superior Court had been successful (which it could not have been, due to glaring procedural and substantive deficiencies.  Plaintiffs ultimately voluntarily dismissed the case), the only lawful remedy that could be imposed by a court is a new election, not the "flipping" of one slate of electors for another.  *See* O.C.G.A. § 21-2-527(d) (authorizing setting aside an election shown to be defective as to place in doubt the result, and permitting the court to call for a second election).

Defendant simply has not supported his assertion of "federal official" status with facts that would enable this Court to draw such a conclusion.

## II. ARGUMENT

Defendant seeks to remove his pending criminal case under 28 U.S.C. § 1455, on the basis that at the time he engaged in the conduct described in the indictment, he was a "federal officer" under 28 U.S.C. § 1442(a)(1). That is flatly wrong. Federal officer removal is only available to (1) any officer, agent, or agency of the United States (2) "for [or relating to] any act under color of such office" so long as they can (3) "raise a colorable defense arising out of its duty to enforce federal law." *Florida v. Cohen*, 887 F.2d 1451, 1454-55 (11th Cir. 1989). The removing party bears the burden of demonstrating that removal is proper, and if the non-removing party "appropriately challenges" the facts presented in the notice of removal, the removing party "must support [its factual averments] by competent proof." *People v. Trump*, 2023 U.S. Dist. LEXIS 124733, *15 (S.D.N.Y. 19 July 2023) (citations omitted).

Here, Defendant cannot satisfy any of the three criteria. He cannot summon the factual support to overcome the first hurdle—Still and the other fraudulent electors were not acting as or at the direction of federal officials in any recognized interpretation of that role. Moreover, even legitimate presidential electors serve as

8

agents of the individual States, not as federal officials entitled to 28 U.S.C.

§ 1442(a)(1) removal.  *See Ray v. Blair*, 343 U.S. 214, 224-25 (1952) (presidential

electors exercise are agents of the states, not federal officers or agents).  And

finally, Still took no direction from any federal official within the scope of that

official's role—at best, he and the other fraudulent electors took direction from the

Trump campaign and from State Republican party attorneys to further the

campaign's litigation and goals.  There is not a legitimate federal role to be found

in any of Defendant's actions.

As to the remaining factors, Defendant falls short there as well.

Impersonating certified presidential electors in service to a political campaign

cannot be seriously within the scope of any federal role, and Defendant makes no

serious argument that it does.  [Doc. 1], 10.  None of the alleged crimes charged in

the Indictment fall within the range of any federal official duties, least of all for

Defendant acting in furtherance of a purely campaign-related goal.  As other courts

have explained, "the long-recognized purpose of federal-officer removal is the

protection of federal *authority*[—t]here is no federal authority to protect here."

*State v. Meade*, 2022 U.S. Dist. LEXIS 28535, *18 (S.D. Ohio Feb. 17, 2022)

(emphasis in original) (citing *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)).

Similarly, Defendant's proffered federal defenses of Supremacy Clause immunity, preemption, Due Process protection, and First Amendment protection mere fig leaves, stating declarations of applicability without authority or factual support.  [Doc. 1], 11-14.  As explained below, Defendant was not a federal official within the meaning of Section 1442(a)(1), putting any Supremacy Clause or preemption defense beyond his reach.  In short, Defendant Still's effort to remove his case to this Court fails on every level.

## A. DEFENDANT STILL IS NOT A FEDERAL OFFICIAL WITHIN THE MEANING OF SECTION 1442(a).

As is now familiar to this Court, Section 1442 (a) authorizes a defendant to move his state criminal prosecution to federal court if the defendant is:

> [A]ny officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office…

28 U.S.C. § 1442(a)(1); *see also Hurt-Whitmire v. Georgia*, 336 F. App'x 882 (11th Cir. 2009).  The Supreme Court of the United States has explained the intent of the provision:

> The Federal Government "can act only through its officers and agents, and they must act within the States.  If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State

court,—the operations of the general government may at any time be arrested at the will of one of its members."

*Mesa v. California*, 489 U.S. 121, 126 (1989) (*quoting Tennessee*, 100 U.S. at 263).  Section 1442 applicability is not unlimited, and cannot be contorted to cover Defendant's impersonation of a presidential elector to further a conspiracy to overturn an election.

### 1.  Defendant Still was impersonating a presidential elector.

The entire premise of Defendant's notice of removal—that by virtue of his role as a "contingent" presidential elector, he was acting as a federal official entitled to Section 1442(a) removal—is refuted by the facts and the evidence before the Court.  Still was never a certified or recognized presidential elector with any elector role to fulfill.

By the time Defendant and the other losing Republican elector nominees met on December 14, Governor Kemp had twice certified the Democratic slate of electors; there was no valid means by which the group could have been "duly elected and qualified," as the document represented, when the Democratic slate had already filled that role.  Ex. 4 (Fraudulent Elector Certificate); *compare* Ex. 3 (Dec. 7, 2020 Certification).  Defendant's argument is akin to claiming that a homemade badge could transform him into a genuine United States Marshal with

11

all the powers afforded that position.  Repeating a fiction does not make the statement true.

Moreover, Defendant's own sworn testimony undermines his argument that he was a true presidential elector—he believed the fraudulent certificate was for litigation purposes only, without contemplation of any actual federal function. [Doc. 1-3], 24 ("[W]e were trying to **preserve the integrity of the lawsuit** and that we had to just fill out the paperwork the same way, so that it wouldn't moot the lawsuit that was still pending by the President." (emphasis added)), 54 (no belief that the fraudulent certificate he signed would have any role at Joint Session of Congress on January 6, 2021).  His tortured effort now to cloak himself as an official federal elector is impossible to reconcile with his sworn testimony, and leaves this Court with no basis to conclude he was acting as a federal official.  *See generally New York v. Fried*, 897 F. Supp. 669, 670 (N.D.N.Y. 1995) (concluding that defendant did not satisfy his burden of demonstrating he was a federal agent within the meaning of Section 1442(a) to remove a trespassing charge: "[Defendant] has failed to submit any evidence along with the instant petition for removal which demonstrates that he has been performing work for the

federal government either as its employee or at its request").[2]  Here, Defendant was

simply the nominated elector for the losing presidential candidate, taking direction

from the losing candidate's campaign—a status that affords no removal protection

under Section 1442(a).

### 2. Presidential electors perform a federal function through the exercise of State authority and are not federal officials themselves.

A fundamental shortcoming with Defendant's argument is that even the

actual presidential electors sanctioned by the State based on a certified election are

State actors, not federal, and well outside the scope of appropriate federal removal

of a state criminal prosecution.  As the United States Supreme Court has noted:

> [T]he presidential electors exercise a federal function in balloting for President and Vice-President **but they are not federal officers or agents** any more than the state elector who votes for congressmen. They act by authority of the state that in turn receives its authority from the Federal Constitution.

---

[2]      Even in the civil context, the mere assertion that a person is acting as a federal officer is insufficient to justify removal absent some evidentiary basis.  *See generally City of Brunswick v. Honeywell Int'l, Inc.*, No. CV 222-132, 2023 U.S. Dist. LEXIS 155502 (S.D. Ga. Sept. 1, 2023) (rejecting removal where Defendants failed to establish they "acted under" a federal officer); *Swanstrom v. Teledyne Cont'l Motors, Inc.*, 531 F. Supp. 2d 1325, 2008 U.S. Dist. LEXIS 24020 (S.D. Ala. 2008) (airplane manufacturer unable to establish legitimate basis for federal officer removal because it did not establish that it was designated in any manner as representative of FAA or to act on the agency's behalf in performing official duties); *West v. A & S Helicopters*, 751 F. Supp. 2d 1104, 2010 U.S. Dist. LEXIS 120948 (W.D. Mo. 2010) (federal officer removal under Section 1442 improper where manufacturer failed to show that it acted under direction of federal officer).

*Ray v. Blair*, 343 U.S. at 224-25 (emphasis added); *see also Chiafalo v. Washington*, __ U.S. __, 140 S. Ct. 2316, 2324-25 (2020) (citing *Ray*, accepting that electors are state actors, and finding no constitutional prohibition on states imposing penalties for faithless electors).

Defendant's particular standing as a fraudulent elector—uncertified and unofficial with no state or federal authority—makes a deep dive into the history and evolution of presidential electors largely unnecessary for this Court's purposes; it is enough to note that it has long been recognized that:

> The sole function of the presidential electors is to cast, certify and transmit the vote of the State for President and Vice President of the nation. Although the electors are appointed and act under and pursuant to the Constitution of the United States, they are no more officers or agents of the United States than are the members of the state legislatures when acting as electors of federal senators, or the people of the States when acting as electors of representatives in Congress.

*In re Green*, 134 U.S. 377, 379-80 (1890); *see also Walker v. United States*, 93 F.2d 383, 388 (8th Cir. 1937) ("It is contended by defendants that presidential electors are officers of the state and not federal officers. We are of the view that this contention is sound and should be sustained." (citation omitted)).  Instead, the Constitution provides that presidential electors act under state authority.  *Ray*, 343 U.S. at 224-25.  And while Article II and the Twelfth Amendment give States

broad power over electors, those provisions give electors themselves no

rights. *Chiafalo*, 140 S. Ct. at 2328.

### 3. Defendant Still was not acting at the behest of any federal official performing an official function; the evidence shows he was a political actor serving a campaign function.

Defendant argues to this Court that, even if he were not a federal official

himself, he was acting at the behest of then-President Trump and that transforms

his role a federal one.  [Doc. 1], 9 ("Mr. Still, as a presidential elector, was also

acting at the direction of the incumbent President of the United States.").  But even

accepting Still's representation that his co-defendant Trump directed campaign

operatives to employ the fraudulent elector scheme in states across the country, it

was Trump *the candidate*, not Trump the President, that was furthering the

campaign deception.  As the testimony already before this Court has demonstrated,

the then-President had no authority whatsoever to direct action of State

certification or administration of electors.  Ex. 5 (August 28, 2023 *State of Georgia*

*v. Mark Meadows* 1:23-CV-03621-SCJ, testimony of Secretary of State Brad

Raffensperger at 189).  The litigation brought in Fulton County Superior Court that

Defendant and his co-defendant fraudulent electors were trying to advance was

brought by Trump as an individual and the Trump campaign, not Trump in his

official role as President.  *See DONALD J. TRUMP, in his capacity as Candidate*

*for President, DONALD J. TRUMP FOR PRESIDENT, INC., and DAVID*

*SHAFER, in his capacity as a registered voter and Presidential Elector pledged to*

*DONALD TRUMP for President. v. Raffensperger et al.*, Case No. 2020CV343255

(Fulton County Superior Court).  As Still has frankly acknowledged, his actions in

participating in the entire fraudulent elector scheme were an effort to preserve and

further campaign litigation brought by Trump the candidate and the Trump

campaign.  [Doc. 1-3], 24 ("[W]e were trying to preserve the integrity of the

lawsuit...").  The facts simply do not support that Still acted under the direction of

any federal official in an official capacity.

     While the phrase "acting under" is broad and Courts will "liberally construe"

this portion of § 1442(a)(1), that does not make the criteria meaningless.  *Watson v.*

*Philip Morris Cos.*, 551 U.S. 142, 147 (2007).  Even under that deferential

standard, a private person assisting a political campaign cannot clear that hurdle.

A "private person's 'acting under' must involve an effort to *assist*, or to help *carry*

*out*, the duties or tasks of the federal superior."  *Id.* at 152 (emphasis in original;

citations omitted).   In other words, the private person must help federal officers

fulfill a basic governmental task that the government otherwise would have had to

perform. *Id.* at 153-54.  Defendant points to no such task.

There are several federal laws and regulations that seek to separate campaign activities from that of the government itself, making campaign work performed at the behest of a federal official outside the scope of federal removal.  *See* 5 U.S.C. §§ 7323(a), 7324(a) (commonly referred to as the "Hatch Act," prohibiting government employees from engaging in partisan political activity while on duty, in a federal facility or using federal property).  Defendant could not have been acting to assist or carry out campaign functions of a federal official that (1) he never actually spoke to[3] and (2) that are entirely outside the scope of any legitimate federal function.

### B. AS HE HOLDS NO FEDERAL ROLE, AND DID NOT ACT TO ASSIST ANY FEDERAL OFFICIAL, STILL'S INVOLVEMENT IN THE CHARGED CRIMES CANNOT BE WITHIN THE SCOPE OF ANY "FEDERAL OFFICE."

Defendant offers a single paragraph, with reference to Defendant David Shafer's Notice of Removal as a means of incorporation, to support his argument that he satisfies the second requirement of the Section 1442(a)(1) criteria for removal (i.e., "for or relating to any act under color of such [federal] office").

---

[3]     *See* [Doc. 1-3], 34 (Q: "So other than Mr. Sinners, did you have direct communications with anyone from the Trump campaign about the meeting of the electors?" A: "No.  The only person I spoke to related to the Trump campaign was Robert [Sinners, campaign attorney] . . . I didn't speak to anybody representing the President, no."), 35 (never spoke with anyone from the White House).

[Doc. 1-10].  He asserts—with no supporting evidence—that he "met and cast a vote in his capacity as contingent presidential elector pursuant to advice from Candidate Trump's attorney, and the Indictment charges him in eight counts for conduct related to that very same elector meeting and vote" and "[t]hus, a 'connection' or 'association' exists . . . ."  *Id*.  Defendant's bare assertions fall far short of the necessary showing.

"The phrase 'relating to' … requires only a 'connection' or 'association' between the act in question and the federal office."  *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017) (internal citations omitted).  While not a particular high hurdle, the caselaw is clear that "[n]ot every act of or on behalf of a federal officer is an act under color of office."  *People v. Trump*, 2023 U.S. Dist. LEXIS 124733, at *20 (S.D.N.Y. July 19, 2023).  "[T]he person seeking the benefit of [federal officer removal] should be candid, specific and positive in explaining his relation to the transaction growing out of which he has been indicted, and in showing that his relation to it was *confined to his acts as an officer*."  *Colorado v. Symes*, 286 U.S. 510, 520 (1932) (emphasis added).

Defendant cannot satisfy the requirement that his actions as a fictitious presidential elector relate to an official act by a federal official.  As discussed above, "contingent electors" are no electors at all, and fraudulent presidential

electors are explicitly *not* federal officers.  To the extent Defendant contends that he was directed to act by then-President Trump in his official capacity, that representation (1) has no factual support and (2) cannot survive the slightest of scrutiny.  Defendant points to communication with only Trump campaign official Robert Sinners, Trump campaign attorneys, and Georgia State Republican Party Chair David Shafer—there is not a single federal official among them.  [Doc. 1-3], 24 (describing communication), 35 (no communication with White House).  He has produced no evidence of any communication, direction, or order from a federal official acting within the scope of any federal function, and thus cannot satisfy his burden to show that his action was under "the color" of any officer's federal duties.

A reliance on Trump the candidate provides no support for Defendant; the law recognizes that even a President is not entitled to immunity for "unofficial acts grounded purely in the identity of his office."  *Clinton v. Jones*, 520 U.S. 681, 693 (1997).  There is an "outer perimeter" to a president's legitimate federal function beyond which he engages in private conduct, and personal campaign activity surely falls into that private activity outside a president's legitimate federal function.  *Id.*; *see also Trump v. Vance*, ___ U.S. ___, 140 S. Ct. 2412, 2429 (2020) (holding that then-President Trump's personal papers were distinct from official documents and not entitled to the heightened showing required for a

subpoena).  Employing an analysis that considered "the relationship of the

challenged conduct to the claimed corresponding function of the President,"

another federal court has already found that Mr. Trump's acts of "direct outreach

to state election officials" were "not official acts."  *Thompson v. Trump*, 590 F.

Supp. 3d 46, 82-83 (D.D.C. 2022).  Like the actions of Trump discussed in

*Thompson*, Defendant's false representation that he and the other nominated

Republican electors were "duly elected and qualified," along with the attempt to

have the votes of the losing slate counted in the Electoral College "do not relate to

[the President's] duties of faithfully executing the laws, conducting foreign affairs,

commanding the armed forces, or managing the Executive Branch."  *Id.* at 84.

"**They entirely concern his efforts to remain in office for a second term**." *Id.*

(emphasis added).

While a defendant seeking to remove a state prosecution is expected to make

a "candid, specific and positive" showing "explaining his relation to the transaction

growing out of which he has been indicted, and in showing that his relation to it

was confined to his acts as an officer," *Symes*, 286 U.S. at 520, Defendant has not

made any such showing.  And he cannot, because "[a] sitting President is

prescribed no role" in the election of a president. *Thompson*, 590 F. Supp. 3d at 77.

While the Constitution and the Electoral Count Act specify the duties of various

officials in Congress and at the state level, there is no role whatsoever for the president to play in the presidential election certification process, and thus there is no authority that Defendant can cite to claim his activities were taken "under color of office" even if done at the behest of the then-president. *See id.* at 77-78. Just as Defendant has failed to satisfy the federal official requirement, this removal inquiry should end for the independent reason that he has not demonstrated that he satisfies the second requirement for removal.

## C. DEFENDANT STILL HAS NO COLORABLE FEDERAL DEFENSE

Finally, to remove a case under § 1442, the defendant also must raise a "colorable federal defense." *Mesa*, 489 U.S. at 136. In the context of removal, "colorable" means "plausible." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996). In his Notice, Defendant fleetingly touches on several supposed available federal defenses, none of which have any applicably to the charges he faces because he had no federal role to carry out. [Doc. 1], 10-13.

The first potential federal defense raised is Supremacy Clause immunity, which requires a defendant to show both that he was performing "an act which he was authorized to do by the law of the United States" and, in performing that authorized act, "he did no more than what was necessary and proper for him to do." *In re Neagle*, 135 U.S. 1, 75 (1890). In the Eleventh Circuit, a defendant's

claim of Supremacy Clause immunity is negated by evidence that the individual acted out of "personal interest, malice, actual criminal intent, or for any other reason than to do [their] duty as [they] saw it." *Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982).

Defendant, of course, had no federal duty, even if he had been an actual presidential elector. The fact that he and the other fraudulent electors pretended to be duly elected and qualified presidential electors confers no federal official standing whatsoever, and no federal action to be protected with immunity. The activities in which he conspired with then-President Trump were all "unofficial" activities concerning campaign litigation and Trump's efforts to remain in office for a second term, and there is no federally protected authority for a president or anyone acting on his behalf to take any actions concerning the administration of a presidential election under either the Constitution or federal law.

Second, even if Defendant somehow had been acting as authorized under federal law (rather than directly contrary to it), that authority would be negated by the evidence of his "personal interest, malice, actual criminal intent" or any motivation "for any other reason than to do his duty as he saw it." *Baucom v. Martin*, 677 F.2d at 1350. Defendant was admittedly acting only to further Trump campaign litigation goals, and not in the least to advance any legitimate federal

function.  [Doc. 1-3], 24 ("[W]e were trying to preserve the integrity of the lawsuit"), 54 (no belief that the fraudulent certificate he signed would have any role at the Joint Session of Congress).

Third, Still cannot plausibly argue that he did no more than that which was "necessary and proper" for him to do.  "For conduct to be 'necessary and proper,' an officer must subjectively believe that his actions were appropriate to carry out his federal duties, and that belief must be objectively reasonable." *Texas v. Kleinert*, 855 F.3d 305, 314 (5th Cir. 2017).  As shown above, there is no authority anywhere for the losing presidential candidate's nominated electors to insert themselves into the electoral processes of the State of Georgia, meaning none of Defendant's actions were either necessary or proper, even if they had been done at the direction of Trump as opposed to the Trump campaign.  "The Office of the President has no preference for who occupies it . . . . A function of the presidency therefore is *not* to secure or perpetuate incumbency." *Thompson*, 590 F. Supp. at 82 (emphasis original).

Defendant points to nothing supporting a conclusion that could demonstrate why it would be "objectively reasonable" to believe that his duties as the presidential elector nominee of the losing presidential candidate included acting on behalf of the Trump campaign, or conspiring to change the result of the election in

Georgia.  It is not enough to merely say that the defendant acted at the behest of or in service to the person who was President at the time.  A claim of immunity for unofficial acts cannot be "grounded purely in the identity of [the President's] office."  *Clinton*, 520 U.S. at 695.  Defendant's half-hearted preemption defense—for which he cites no authority nor makes any factual showing—fails for the same reason.

There is no demonstrable basis for federal authority related to the defendant's actions, and there is ample evidence of personal, political, and unofficial intentions and activities—all of which make his passing claims of other federal defenses completely out of reach.  The First Amendment provides no protection from criminal liability in this instance.  *See generally Bill Johnson's Rests, Inc. v. NLRB*, 461 U.S. 731, 743 (1983) ("Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.") (internal citation omitted).  While Defendant may certainly have a right to petition the government for redress, he has no right to present documents making false representations of fact.

Similarly, advice of counsel provides no basis for a Due Process defense—Georgia courts have not recognized such a defense, much less in the circumstances

where the person asserting it relied on the advice of an attorney representing

someone else; Defendant cites to no authority that would recognize a mitigated

*mens rea* for criminal activity undertaken after advice from a third party's

campaign attorney.  *See Ulbrich v. State*, 363 Ga. App. 503, 516 (2022) (finding no

plain error in the refusal to give a jury instruction on good faith reliance on advice

of counsel where no Georgia authority recognizes those defenses); *see also, e.g.,*

O.C.G.A. § 15-19-17 ("Clients shall not be relieved from their liability for

damages and penalties imposed by law on the ground that they acted under the

advice of their counsel but are entitled to redress from their counsel for unskillful

advice.").  Defendant cites no authority for these alternative "defenses," because

there is no authority for them.

## CONCLUSION

Defendant Still had no federal official role as a nominated presidential elector

for the losing candidate, either in his own right or derivative of anyone else.  His

actions were not made under "color of federal office" but explicitly at the direction

of the Trump campaign, and they do not support a claim of Supremacy Clause

immunity or any other federal defense.  In short, he has failed to support any of the

requirements to satisfy removal pursuant to Section 1442(a), and his effort to

remove should be denied.

25

Respectfully submitted, this 5th day of September 2023.

**FANI T. WILLIS**
**DISTRICT ATTORNEY**
**ATLANTA JUDICIAL CIRCUIT**


*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Atlanta Judicial Circuit
Georgia Bar No. 306674
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
anna@crosskincaid.com


F. McDonald Wakeford
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit
Georgia Bar No. 414898
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
Fmcdonald.wakeford@fultoncountyga.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this pleading complies with

the Local Rules of this Court, including Local Rules 5.1.C and 7.1.D (N.D. Ga.) in

that it is double-spaced and composed in 14-point Times New Roman font.

This 5th day of September 2023.

*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Atlanta Judicial Circuit
Georgia Bar No. 306674
