# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA
### 2211 UNITED STATES COURTHOUSE
### 75 TED TURNER DRIVE, SW
### ATLANTA, GEORGIA 30303-3361

KEVIN P. WEIMER
DISTRICT COURT EXECUTIVE
 AND CLERK OF COURT

DOCKETING SECTION
404-215-1655

October 6, 2023

Clerk's Office
U.S. Court of Appeals
Eleventh Circuit
56 Forsyth Street, NW
Atlanta, Georgia     30303

**U.S.D.C. No.: 1:23-cv-3792-SCJ**
**U.S.C.A. No.: 00-00000-00**
**In re:          The State of Georgia v. Shawn Micah Tresher Still**

Enclosed are documents regarding an appeal in this matter.   Please acknowledge receipt on the enclosed copy of this letter.

| | |
|---|---|
| **X** | **Certified copies of the Notice of Appeal, Clerk's Judgment, Opinion & Order and Docket Sheet appealed enclosed.** |
| _____ | This is not the first notice of appeal. Other notices were filed on . |
| _____ | There is no transcript. |
| **X** | **The court reporter Dianne Peede.** |
| _____ | There is sealed material as described below: . |
| _____ | Other: . |
| **X** | **Fees paid electronically on 10/6/23. (Receipt# AGANDC-12935005)** |
| _____ | Appellant has been   leave to proceed *in forma pauperis*. |
| _____ | This is a bankruptcy appeal.   The Bankruptcy Judge is . |
| _____ | The Magistrate Judge is . |
| **X** | **The District Judge is Steve C. Jones.** |
| _____ | This is a **DEATH PENALTY** appeal. |

Sincerely,

Kevin P. Weimer
District Court Executive
and Clerk of Court

By:   /s/P. McClam
      Deputy Clerk

4months,APPEAL,CLOSED

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: <u>1:23–cv–03792–SCJ</u>

The State of Georgia v. Still
Assigned to: Judge Steve C. Jones
Related–miscellaneous Cases:  1:23–cv–03621–SCJ
                                 1:23–cv–03720–SCJ
                                 1:23–cv–03721–SCJ
                                 1:23–cv–03803–SCJ

Case in other court:  Fulton County Superior Court,
                      23SC188947
Cause: 28:1442 Petition for Removal – Suit against Federal
Officer

Date Filed: 08/24/2023
Date Terminated: 09/29/2023
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**Plaintiff**

**The State of Georgia**                          represented by  **Fani T. Willis**
Fulton County District Attorney's Office
136 Pryor Street
Atlanta, GA 30303
404–612–8904
Email: fani.willisda@fultoncountyga.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan J. Wade**
Fulton County District Attorney's Office
3rd Floor
136 Pryor Street, SW
Atlanta, GA 30303
770–303–0700
Fax: 770–303–0707
Email: nathanwade@lawyer.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alex Bernick**
Fulton County District Attorney's Office
136 Pryor Street SW
3rd Floor
Atlanta, GA 30303
404–698–5506
Email: alex.bernick@fultoncountyga.gov
*ATTORNEY TO BE NOTICED*

**Anna Green Cross**
Office of the Fulton County District
Attorney

1

Third Floor
136 Pryor Street, S.W.
Atlanta, GA 30303
404–948–3022
Email: anna@crosskincaid.com
*ATTORNEY TO BE NOTICED*

**Daysha D'Anya Young**
Fulton County
District Attorney's Office
136 Pryor Street
3rd Floor
Atlanta, GA 30303
470–637–1920
Email: daysha.young@fultoncountyga.gov
*ATTORNEY TO BE NOTICED*

**Francis McDonald Wakeford , IV**
Fulton County District Attorney's Office
3rd Floor
136 Pryor Street, SW
Atlanta, GA 30303
404–613–4670
Email: fmcdonald.wakeford@fultoncountyga.gov
*ATTORNEY TO BE NOTICED*

**John Earl Floyd**
Bondurant Mixson & Elmore, LLP
1201 West Peachtree Street, N.W.
Ste 3900
Atlanta, GA 30309–3417
404–881–4100
Email: floyd@bmelaw.com
*ATTORNEY TO BE NOTICED*

**John William Wooten**
Fulton County District Attorney's Office
136 Pryor Street SW
3rd Floor
Atlanta, GA 30303
404–612–6560
Email: will.wooten@fultoncountyga.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Shawn Micah Tresher Still**               represented by   **Thomas D. Bever**
Smith, Gambrell & Russell, LLC
1105 W. Peachtree Street NE
Suite 1000

Atlanta, GA 30309
404–815–3500
Fax: 404–815–3509
Email: tbever@sgrlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Coleman McFerren**
Smith, Gambrell & Russell
1105 W. Peachtree St. NE
Suite 1000
Atlanta, GA 30309
770–876–1634
Email: cmcferren@sgrlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/24/2023 | 1 | | NOTICE OF REMOVAL with CRIMINAL INDICTMENT filed by Shawn Micah Tresher Still. (Filing fee $402 receipt number AGANDC–12840555) (Attachments: # 1 Exhibit A – 23SC188947 Indictment, # 2 Exhibit B – 12.14.20 Transcript, # 3 Exhibit C – 02.25.22 Transcript, # 4 Civil Cover Sheet) (bgt) Please visit our website at http://www.gand.uscourts.gov/commonly–used–forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 08/25/2023) |
| 08/25/2023 | 2 | | ORDER directing that the Parties participate in an evidentiary hearing concerning the Notice of Removal of the Indictment against Shawn Micah Tresher Still on Monday, September 18, 2023, at 2:00 P.M. at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, in Courtroom 1907. The Fulton County District Attorney's Office may submit a written response to Still's Notice of Removal no later than Tuesday, September 5, 2023. Any response submitted must not exceed 25 pages in length. In the interim, pursuant to 28 U.S.C. § 1455(b)(3), proceedings may continue in the Superior Court of Fulton County, Georgia. Signed by Judge Steve C. Jones on 08/25/2023. (ddm) (Entered: 08/25/2023) |
| 08/25/2023 | 3 | | *Notice of Leave of Absence of Counsel – Thomas D. Bever* for the dates of September 4–8, 2023 and October 11–13, 2023. (Bever, Thomas) Modified on 8/28/2023 to edit docket entry (ddm). (Entered: 08/25/2023) |
| 08/26/2023 | 4 | | NOTICE of Appearance by John Wooten on behalf of The State of Georgia (Wooten, John) (Entered: 08/26/2023) |
| 08/28/2023 | 5 | | Notice for Leave of Absence for the following date(s): August 28–September 4, 2023; October 11–13, 2023, by Thomas D. Bever. (Bever, Thomas) (Entered: 08/28/2023) |
| 08/30/2023 | 6 | | NOTICE of Appearance by Anna Green Cross on behalf of The State of Georgia (Cross, Anna) (Entered: 08/30/2023) |

3

| 09/01/2023 | 7 | | NOTICE of Appearance by John Earl Floyd on behalf of The State of Georgia (Floyd, John) (Entered: 09/01/2023) |
|---|---|---|---|
| 09/05/2023 | 8 | | RESPONSE re 1 Notice of Removal,, 2 Order,,, Set Deadlines/Hearings,, filed by The State of Georgia. (Attachments: # 1 Exhibit Nov 20 Certification, # 2 Exhibit Dec. 7 Recount Certification, # 3 Exhibit Dec. 7 Certification, # 4 Exhibit Fraudulent Elector Certificate, # 5 Exhibit Excerpt Transcript Raffensperger)(Cross, Anna) (Entered: 09/05/2023) |
| 09/08/2023 | 9 | | MOTION to Consolidate Evidentiary Hearings filed by Shawn Micah Tresher Still. (Bever, Thomas) Modified on 9/8/2023 to edit docket text (ddm). (Entered: 09/08/2023) |
| 09/11/2023 | 10 | | ORDER directing The State of Georgia to respond, by 12:00 p.m., on September 12, 2023, to Defendant's Motion to Consolidate Evidentiary Hearings 9 . Signed by Judge Steve C. Jones on 09/11/2023. (ddm) (Entered: 09/11/2023) |
| 09/11/2023 | 11 | | ADMINSTRATIVE ORDER NO. 23–04: IN RE USE OF CELLULAR TELEPHONES AND ELECTRONIC DEVICES ON THE 19TH FLOOR OF THE RICHARD B. RUSSELL BUILDING ON SEPTEMBER 18 AND SEPTEMBER 20, 2023. Signed by Chief Judge Timothy C. Batten, Sr. on 9/11/2023. (bgt) (Entered: 09/11/2023) |
| 09/11/2023 | 12 | | RESPONSE re 9 MOTION to Consolidate Evidentiary Hearings filed by The State of Georgia. (Cross, Anna) (Entered: 09/11/2023) |
| 09/11/2023 | 13 | | ORDER GRANTING the 9 Motion to Consolidate Evidentiary Hearings. Accordingly, the September 18, 2023 (2:00 p.m.) hearing for the case sub judice is CANCELED. Given the overlap in arguments and evidence, and in the interest of judicial economy, a consolidated evidentiary hearing concerning the Notices of Removal for the following three cases will be held on SEPTEMBER 20, 2023 at 9:30 A.M. (Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, Courtroom 1907): Georgia v. David James Shafer, Civil Action No. 1:23–cv–03720; Georgia v. Shawn Micah Tresher Still, Civil Action No. 1:23–cv–03792; and Georgia v. Cathleen Alston Latham, Civil Action No. 1:23–cv–03803. Signed by Judge Steve C. Jones on 09/11/2023. (ddm) (Entered: 09/11/2023) |
| 09/14/2023 | 14 | | NOTICE of Appearance by Daysha D'Anya Young on behalf of The State of Georgia (Young, Daysha) (Entered: 09/14/2023) |
| 09/14/2023 | 15 | | ORDER denying 10 Motion for Authorization for Witness to Appear and Testify by Means of Video Teleconference Technology as filed in 1:23–CV–3720–SCJ. Signed by Judge Steve C. Jones on 9/14/2023.(pdw) (Entered: 09/14/2023) |
| 09/15/2023 | 16 | | NOTICE of Appearance by Alex Bernick on behalf of The State of Georgia (Bernick, Alex) (Entered: 09/15/2023) |
| 09/15/2023 | 17 | | OBJECTION re 8 Response (Non–Motion), *Reply to State of Georgia's Response to Defendant Shawn Still's Notice of Removal* by Shawn Micah Tresher Still. (Attachments: # 1 Exhibit A: Hawaii Complaint, Findings of Fact, and Judgment)(Bever, Thomas) (Entered: 09/15/2023) |
| 09/15/2023 | 18 | | NOTICE by Shawn Micah Tresher Still *of Waiver of Right to Appear at Evidentiary Hearing* (Bever, Thomas) (Entered: 09/15/2023) |

| 09/15/2023 | 19 | | NOTICE of Appearance by Francis McDonald Wakeford, IV on behalf of The State of Georgia (Wakeford, Francis) (Entered: 09/15/2023) |
|---|---|---|---|
| 09/15/2023 | 20 | | ORDER ALLOWING AUDIO/VISUAL EQUIPMENT IN THE COURTROOM for counsel of record on September 20, 2023 at 9:30 a.m. Signed by Judge Steve C. Jones on 9/15/23. (rsg) (Entered: 09/15/2023) |
| 09/18/2023 | 21 | | ORDER directing that if the Defendant still wishes to waive their presence at the September 20, 2023 Coordinated Hearing, the Court ORDERS the Parties to file Declarations of Waiver that are signed by the individual defendant, not their attorneys, before 9:00 AM on SEPTEMBER 20, 2023. Signed by Judge Steve C. Jones on 09/18/2023. (ddm) (Entered: 09/18/2023) |
| 09/18/2023 | 22 | | NOTICE of Appearance by Nathan J. Wade on behalf of The State of Georgia. (ddm) (Entered: 09/19/2023) |
| 09/19/2023 | 23 | | *Declaration of Waiver of Right to Appear at Evidentiary Hearing* filed by Shawn Micah Tresher Still. (Bever, Thomas) Modified on 9/19/2023 to edit docket text (ddm). (Entered: 09/19/2023) |
| 09/20/2023 | 24 | | Minute Entry for proceedings held before Judge Steve C. Jones: Evidentiary Hearing held on 9/20/2023. Oral argument heard regarding Defendants' respective Notices of Removal. Defendants' exhibits 1 and 2 admitted over objection. Defendants' exhibit 3 admitted without objection. Defendants' exhibits 4 and 5 were tendered; the Court will permit counsel for State of Georgia until noon on 9/21/2023 to review and advise the Court of any objections, after which the Court will make a determination regarding admission. (Court Reporter Dianne Peede)(ddm) (Entered: 09/20/2023) |
| 09/20/2023 | 25 | | Exhibit List by Shawn Micah Tresher Still. (ddm) (Entered: 09/20/2023) |
| 09/21/2023 | 26 | | *Briefing Regarding State's Evidentiary Objections to Removal Exhibits* re 25 Exhibit List filed by Shawn Micah Tresher Still. (Bever, Thomas) Modified on 9/21/2023 to edit docket text (ddm). (Entered: 09/21/2023) |
| 09/21/2023 | 27 | | RESPONSE re 26 Response (Non–Motion) filed by The State of Georgia. (Cross, Anna) (Entered: 09/21/2023) |
| 09/21/2023 | 28 | | TRANSCRIPT of an evidentiary hearing held on 9/20/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Diane Peede, Diane_Peede@GAND.uscourts.gov. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/12/2023. Redacted Transcript Deadline set for 10/23/2023. Release of Transcript Restriction set for 12/20/2023. (Attachments: # 1 Appendix) (dcp) (Entered: 09/21/2023) |
| 09/21/2023 | 29 | | ORDER regarding the Defendants' Exhibits 4 and 5 tendered at the coordinated hearing on September 20, 2023. The State does not object to Defendant's Exhibit 4. Accordingly, Defendant's Exhibit 4 is ADMITTED. The Court ADMITS Defendant's Exhibit 5 over the State's Objections. Signed by Judge Steve C. Jones on 09/21/2023. (ddm) (Entered: 09/21/2023) |
| 09/22/2023 | 30 | | |

| | | | |
|---|---|---|---|
| | | | Amended (per 29 Order) Defendants' Exhibit List from 9/20/2023 evidentiary hearing 24 . (pdw) (Entered: 09/22/2023) |
| 09/29/2023 | 31 | | ORDER REMANDING the State's criminal prosecution of Shawn Micah Tresher Still under Section 1455 to Fulton County Superior Court. In the light of these holdings, the Court DIRECTS the Clerk of Court to CLOSE this case. The Court's conclusion is not to suggest any opinion about the State's case against Still. The Court makes no ruling on the merits of the charges against Still or any defense that he may offer. Still maintains the presumption of innocence and bears no burden of proving that he did not commit the crimes charged against him. The burden of proof beyond a reasonable doubt remains with the State. This Order's sole determination is that there is no federal jurisdiction over the criminal case. The outcome of this case will be for a Fulton County judge and trier of fact to ultimately decide. Signed by Judge Steve C. Jones on 9/29/23. (rsg) (Entered: 09/29/2023) |
| 09/29/2023 | 32 | | Remand Letter to Superior Court of Fulton County. (rsg) (Entered: 09/29/2023) |
| 09/29/2023 | | | Civil Case Terminated. (rsg) (Entered: 09/29/2023) |
| 09/29/2023 | 33 | | Case electronically remanded to Superior Court of Fulton County, Georgia. (Envelope #13278475 has been submitted successfully.) (rsg) (Entered: 09/29/2023) |
| 10/06/2023 | 34 | | NOTICE OF APPEAL as to 31 Order,,, by Shawn Micah Tresher Still. Filing fee $ 505, receipt number AGANDC–12935005. Transcript Order Form due on 10/20/2023 (Bever, Thomas) (Entered: 10/06/2023) |
| 10/06/2023 | 35 | | USCA Appeal Transmission Letter to USCA– 11th Circuit re: 34 Notice of Appeal filed by Shawn Micah Tresher Still. (pjm) (Entered: 10/06/2023) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STATE OF GEORGIA

v.

SHAWN MICAH TRESHER STILL,

    Defendant.

CIVIL ACTION FILE

No. 1:23-CV-03792-SCJ

RE: NOTICE OF REMOVAL OF
FULTON COUNTY SUPERIOR
COURT INDICTMENT
NO. 23SC188947

## ORDER

    This matter appears before the Court on Shawn Still's Notice of Removal.

Doc. No. [1].[1] The State of Georgia responded in opposition of removal (Doc. No.

[8]), and Still replied in support of his removal (Doc. No. [17]).

    In this Order, the Court primarily evaluates a relatively narrow question:

whether Still is entitled to remove his criminal prosecution under the federal

officer removal statute (28 U.S.C. § 1442(a)(1)). The Court concludes that the

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers
are those imprinted by the Court's docketing software.

answer is no and  therefore, **DECLINES** to assume jurisdiction over the State's

criminal prosecution of Still under 28 U.S.C. § 1455 and **REMANDS** the case to

the Fulton County Superior Court.[2]

## I.      BACKGROUND

In January 2023, Still began his service as a Georgia state senator for the

48th district. Doc. No. [1], 2. In 2020,  pursuant to Georgia law, Still served as a

presidential elector for the Republican presidential nominee—then-President

Donald J. Trump. Defendant's Exhibit ("DX") 4, Doc. No. [28] (Hearing Tr.) Tr.

24:25–25:5. Following the 2020 Presidential election, Georgia certified that

President Biden, the Democrat presidential nominee, had won Georgia's

presidential contest. Hearing Tr. 69:16–22; 100:14–16.  Despite this certification,

---

[2] As the Court has previously indicated, despite using the term "remand," the Court has not actually assumed jurisdiction over this case under Section 1455, and the State proceedings are ongoing. See Georgia v. Meadows, --- F. Supp. 3d ---, No. 1:23-CV-03621-SCJ, 2023 WL 5829131, at *1 n.3 (N.D. Ga. Sept. 8, 2023). Nevertheless, Section 1455 itself conceives of some form of remand, 28 U.S.C. § 1455(b)(4), and other federal courts who have failed to find that federal jurisdiction exists over a criminal prosecution have "remanded" the prosecution to the state court. See, e.g., New York v. Trump, ---F. Supp. 3d----, No. 23 CIV. 3773 (AKH), 2023 WL 4614689, at *1 (S.D.N.Y. July 19, 2023).

Still, along with fifteen other Republican-nominated presidential electors,[3] met at the Georgia State Capitol to cast presidential elector ballots in favor of President Trump. Hearing Tr. 28:5–16; DX 3. They met because Georgia's election results had been challenged by President Trump and Still's fellow Republican nominated presidential elector, David J. Shafer, in Georgia state courts. Hearing Tr. 28:5–16; DX 3. Ultimately, the Georgia presidential election was declared for the Democratic presidential ticket and the Democrat-nominated presidential electors' votes were counted by the Senate.

Based on these and other election related activities, on August 14, 2023, a grand jury empaneled in the Superior Court of Fulton County, Georgia, returned a 41-count Indictment against Still and eighteen other defendants. Doc. No. [1].

_____

[3] Still and these fifteen other individuals who met as the Republican-nominated presidential electors have been deemed "fake electors," in the media and were referred to as such by the State at the evidentiary hearing in this matter. Hearing Tr. 8:6-12; 68:18–21. Still's counsel urged that they be referred to as "contingent electors." Id. at 9:7–11. Neither term, however, adequately describes the Republican-nominated presidential electors under federal or Georgia law. Federal law does not contain the term "contingent elector." The Georgia law specifically relating to electors in contested contests also does not use the term "contingent elector." O.C.G.A. § 21-2-503. In fact, this Georgia provision applies to the electors in contested elections who have presumptively won, which here would have been the Democrat-nominated presidential electors. Id. For the sake of precision and clarity, therefore, the Court will use the term "Republican-nominated presidential electors" to describe Still and the other fifteen individuals that attended the December 14, 2020 meeting.

3

The Indictment charges Still with seven of the counts—which include, being a part of criminal conspiracy in violation of Georgia's Racketeer Influenced Corrupt Organization (RICO) Act (Count One); impersonating a public officer (Count Eight); two counts of forgery in the first degree (Count Ten and Sixteen); two counts of false statements and writing (Count Twelve and Eighteen), and criminal attempt to commit filing false documents (Count Fourteen). Doc. No. [1-1], 3–4.

On August 24, 2023, Still filed a Notice of Removal of this criminal proceedings in this Court. Doc. No. [1]. Still seeks to remove the criminal prosecution against him pursuant to  28 U.S.C. § 1455, asserting federal officer jurisdiction under 28 U.S.C. § 1442. See generally id. Still's Notice of Removal incorporates Section II.A. of David J. Shafer's Notice of Removal (Georgia v. David J. Shafer, 1:23-cv-3792 (Doc. No. [1], 15–21) (N.D. Ga. Aug. 21, 2023) (hereinafter "Shafer, Doc. No. [1]")). Doc. No. [1], 8 n.4.[4] The Court declined to

_____

[4] The Court generally does not allow Parties to incorporate by reference the arguments contained in other Parties' briefs without express permission. In this case, the State was given sufficient time to object to the incorporation in both briefing and during the hearing. Because the Parties presented jointly on the issues contained in Section II.A.

4

summarily remand Still's removal action under Section 1455(b)(4) and ordered an evidentiary hearing to be held on the Notice of Removal on September 20, 2023, pursuant to Section 1455(b)(5). Doc. Nos. [2], [9]. The Court also ordered the State to respond to Still's Notice of Removal (Doc. No. [2]), which it did on September 5, 2023 (Doc. No. [8]). Still replied on September 15, 2023. Doc. No. [17].

On September 20, 2023, the Court held a consolidated hearing on Still's Notice of Removal with two other indicted co-defendants who served as Republican-nominated presidential electors (David J. Shafer and Cathleen Alston Latham). Doc. No. [24]. Still waived his right to appear at the evidentiary hearing (Doc. No. [23]) and neither the State of Georgia nor the Defendants presented any live witnesses. See generally Hearing Tr. Instead, Defendants successfully moved to admit five exhibits and orally presented their legal argument asserting federal jurisdiction. Id.; Doc. No. [25]. The Court also heard argument from the State in opposition to removal. Hearing Tr. 66:6–75:14.

_____

(i.e., whether Shafer was a federal officer) at the Consolidated Hearing and the State had ample opportunity to respond, the Court will incorporate Section II.A. of Shafer's Notice of Removal (Shafer, Doc. No. [1]) into Still's Notice of Removal. However, the Court will not incorporate the remainder of Shafer's arguments to Still's case.

5

At the conclusion of the hearing, the Court took the matter of its jurisdiction over the criminal prosecution under advisement. Having considered the arguments put forth by the Parties, the evidence submitted at the evidentiary hearing, and the briefing on this matter, the Court now enters this Order, concluding that the Court lacks federal jurisdiction over Still's criminal prosecution.

## II.  LEGAL STANDARD

"[A] federal district court should be slow to act 'where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.'" <u>Cameron v. Johnson</u>, 390 U.S. 611, 618 (1968) (quoting <u>Douglas v. City of Jeannette</u>, 319 U.S. 157, 162 (1943)). An exception to those general concepts of federalism is the federal officer removal statute, 28 U.S.C. § 1442(a)(1). That statute allows for federal jurisdiction over "a criminal prosecution . . . against . . . any officer (or any person acting under that officer) of the United States . . . for or relating to any act under color of such office." Federal officer removal "is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." <u>Florida v. Cohen</u>, 887 F.2d 1451, 1453 (11th Cir. 1989) (per curiam)

6

(citing <u>Willingham v. Morgan</u>, 395 U.S. 402, 405 (1969)). Given a preference for state courts conducting their state prosecutions, it has been suggested that a "more detailed showing" of the relation between the acts charged and the federal role at issue is required. <u>Willingham</u>, 395 U.S. at 409 n.4. Furthermore, federal courts must maintain a balance between what Section 1442 allows and respect for a State's right to deal with matters properly within its domain.

Still removed this criminal prosecution under 28 U.S.C. § 1455, which provides the procedure for removing a state criminal prosecution to a federal district court. "28 U.S.C. § 1455 'merely provides procedures that must be followed in order to remove a criminal case from state court when a defendant has the right to do so under another provision.'" <u>Maine v. Counts</u>, No. 22-1841, 2023 WL 3167442, at *1 (1st Cir. Feb. 16, 2023) (quoting <u>Kruebbe v. Beevers</u>, 692 F. App'x 173, 176 (5th Cir. 2017) (per curiam)). Upon filing a notice of removal, the Court must promptly determine whether the notice and its attachments clearly fail to establish the Court's subject matter jurisdiction, and if they do, the case is summarily remanded to state court. 28 U.S.C. § 1455(b)(4). If summary remand is not granted, then the district court must "promptly" hold an evidentiary hearing to determine the "disposition of the prosecution as justice

7

shall require." Id. at § 1455(b)(5). Based on the facts adduced at the hearing and the arguments put forth by the Parties, the Court must determine whether the Defendant has met his burden in establishing that the Court has subject matter jurisdiction over his criminal prosecution. Trump, 2023 WL 4614689, at * 5 (citing United Food & Comm. Workers Union v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)).

Under 28 U.S.C. § 1442, the question of the scope of a federal officer's authority contains issues of law and fact. See Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992) ("[D]etermination[s] of whether an employee's actions are within the scope of his employment involve[ ] a question of law and fact.").

Ultimately, for removal under Section 1455 to be proper, the removing party must show that there is a basis for the federal court to exercise jurisdiction over the criminal prosecution. See Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."). If the Court lacks federal jurisdiction, then the case cannot proceed in this forum.

The Supreme Court has cautioned that "an airtight case on the merits in order to show the required causal connection" is not required and that courts are

8

to "credit" the movant's "theory of the case" for the elements of the jurisdictional inquiry.[5] Jefferson Cnty. v. Acker, 527 U.S. 423, 432 (1999). "The point is only that the officer should have to identify as the gravamen of the suit an act that was, if not required by, at least closely connected with, the performance of his official duties." Id. at 447 (Scalia, J., dissenting).

## III.   ANALYSIS

The Court has no jurisdiction over the State's prosecution of Still under the federal officer removal statute because Still failed to carry his burden in establishing that he is a federal officer or that he acted under the direction of a federal officer.

### A.   Who is a Federal Officer?

Still filed his notice of removal of this case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The federal officer removal

---

[5] The Court notes that this language in Acker refers to the colorable defense prong of the analysis. Acker, 527 U.S. at 432. Nevertheless, the Court will evaluate the theory of the case as it relates to the color of office because at least one district court recently has applied it in this manner. See Georgia v. Heinze, 637 F. Supp. 3d 1316, 1322 (N.D. Ga. 2022).

9

statute applies to "any officer . . . of the United States, or any agency thereof" or "any person acting under that officer." Id.

The questions before this Court are whether (1) Still was a federal officer when he acted as a Republican-nominated presidential elector or (2) whether Still was acting under a federal officer during the actions in the Indictment. The answer to both questions is no.

### 1.   *Still as a federal officer himself*

The Court ultimately concludes that Still was not a federal officer when he acted as a Republican-nominated presidential elector because presidential electors are not federal officers. The Court first addresses the role of a presidential elector broadly and then considers the nuances of Still's specific status as a Republican-nominated presidential elector.

### a)   **Presidential electors**

The Court first determines that presidential electors are not federal officers. A number of considerations, including the text of the Electors Clause, the

10

Supreme Court's prior statements, in *dicta*[6], on presidential electors, and the general purpose of the federal officer statute (in the light of presidential electors' role), all support this conclusion.

     The Electors Clause provides:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. Const. art. II, § 1, cl. 2.

--------------------------------------

[6] Shafer, Still, and Latham argued that these statements regarding the status of presidential electors are not dispositive of the federal officer question, in part, because they are dicta, and because they relate to the appointment of presidential electors. Hearing Tr. 40:13–14. To the extent that the pronouncements in the subsequent cases are dicta, "[federal courts] do not [ ] consider dicta from the Supreme Court lightly. Rather, [courts] according it appropriate deference . . . As we have frequently acknowledge, Supreme Court dicta have a weight greater than ordinary judicial dicta as prophecy of what that Court might hold; accordingly [courts] do not blandly shrug them off because they were not a holding." <u>Schwab v. Crosby</u>, 451 F.3d 1308, 1326 (11th Cir. 2006) (quoting <u>United States v. Camargo</u>, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000)). The Court sees no reason to find an exception to Supreme Court's statement that presidential electors are not federal officers. The Court particularly finds that <u>Green</u>, the case upon which all the other Supreme Court cases rely, is highly relevant as it specifically states that the casting, certifying, and the transmitting of the ballots does not make presidential electors federal officers. 134 U.S. at 379. Whether the act of balloting transformed Still into a federal officer is one of the questions before this Court. Hearing Tr. 34:19-25.

11

The Court notes that the text of the Electors Clause begins by expressly delegating the power to appoint presidential electors to the States. It goes on to qualify that this power has some constitutional limits, namely "*Person holding an Office of Trust . . . under the United States*," are excluded from serving as a presidential elector." Id. (emphasis added); see also The Federalist No. 68 (Alexander Hamilton) (explaining the purpose of the presidential electors is to safeguard against corruption and influence by the President; therefore, "they have excluded from eligibility to this trust, all those who from situation might be suspected of too great devotion to the President in office. No senator, representative, or other *person holding a place of trust or profit under the United States can be of the numbers of the electors*." (emphasis added)). The plain definition of officer is "[s]omeone who holds an office of trust, authority, or command" Officer, Black's Law Dictionary (11th ed. 2019); see also Operation Rescue Nat'l v. United States, 975 F. Supp. 92 (D. Mass. 1997) (citing Lamar v. United States, 241 U.S. 103, 113 (1916) (using dictionaries to determine whether an individual is an officer under Section 1442).

By design, therefore, presidential electors cannot be individuals who hold a place of trust or profit or authority from the United States and thus, do not meet

12

the office of trust category of being a federal officer. Additionally, the role of presidential electors is to meet in their respective states, cast their ballots, and transmit them to Congress. U.S. Const. art. II, § 1, cls. 2–3, amend. XII. There is nothing about these actions or the text of the Constitution that gives a presidential elector authority or command over any federal activities. Accordingly, including presidential electors within the category of federal officers is inconsistent with the plain meaning of the word "officer."

Furthermore, in various contexts since 1890, the Supreme Court has stated that presidential electors are not federal officers. See Fitzgerald v. Green, 134 U.S. 377, 379 (1890) ("Although the [presidential] electors are appointed and act under and pursuant to the [C]onstitution of the United States, they are no more officers or agents of the United States than are the members of the state legislatures when acting as electors of federal senators, or the people of the states when acting as electors of representatives in congress."); McPherson v. Blacker, 146 U.S. 1, 35 (1892) (same); Burroughs v. United States, 290 U.S. 534, 545 (1934) ("While presidential electors are not officers or agents of the federal government . . . they exercise federal functions under, and discharge duties in virtue of authority conferred by, the Constitution of the United States.");

Ray v. Blair, 343 U.S. 214, 224 (1952) ( "The presidential electors exercise a federal function in balloting for President and Vice-President but they are not federal officers or agents any more than the state elector who votes for congressmen."); Oregon v. Mitchell, 400 U.S. 112, 211 n.89 (1970) (Harlan, J., dissenting) ("[P]residential electors act by authority of the States and are not federal officials."); Bush v. Gore, 531 U.S. 98, 112 (2000) (Rehnquist, CJ., concurring) ("While presidential electors are not officers or agents of the federal government . . . they exercise federal functions under, and discharge duties in virtue of authority conferred by, the Constitution of the United States."). To be sure, none of these Supreme Court statements arose under the federal officer removal statute. Nevertheless, the Court finds these statements persuasive, even if not binding, authority for resolving the instant question about whether Still and his other Republican-nominated presidential electors were federal officers.

Still's argument that the act of balloting distinguishes his case from these prior cases commenting on the appointment of presidential electors does not persuade the Court otherwise. Even though electors are engaging in a federal functions when they meet and cast their ballots, that is insufficient to make someone a federal officer. To find otherwise would convert all citizens who can

14

lawfully vote into federal officers when they cast their ballot for U.S. House of Representatives. U.S. Const. art. I, § 2, cl. 1; Green, 134 U.S. at 377. Furthermore, the Constitution does not provide for any action that the presidential electors may undertake on behalf of the United States. U.S. Const. art. II, § 1, cls. 2–3; amend. XII.

Likewise, the appeal to U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 805 (1995) is not compelling. Still specifically argues that the federal officer removal statute applies to him because presidential electors are akin to members of the United States Congress, who are considered federal officers for purposes of removal. Shafer, Doc. No. [1], 17 (citing Thornton, 514 U.S. at 805). The Supreme Court in Thornton (a non-removal case expressly examining Article II, Section 2 of the Constitution), rejected Arkansas's qualifications for congressional candidates that exceeded the Constitutional requirements by emphasizing that congressmembers are paid from the federal Treasury and that "each member of Congress is an officer of the union, deriving his powers and qualifications from the Constitution, and neither created by, dependent upon, nor controllable by the states." Id. at 803.

Even assuming <u>Thornton</u>'s test applies to the instant question, presidential electors would not be federal officers. Presidential electors, by design, are not compensated by the federal Treasury, but are paid pursuant to state law. <u>See</u> U.S. Const. art. II, § 1, cl. 2 ("[N]o Senator, Representative, or other Person holding a . . . *Profit under the United States*, shall be appointed an Elector") (emphasis added); <u>see also</u> O.C.G.A. § 21-2-13 (specifying that Georgia's presidential electors in Georgia are compensated from the State Treasury). Moreover, in contrast to the Constitution's express qualifications for congressmembers, [7] <u>Thornton</u> acknowledged that the States maintain vast amounts of control over the qualifications of their presidential electors. <u>Thornton</u>, 514 U.S. at 804 (quoting U.S. Const. art II, § 1, cl. 2); <u>see also</u> The Federalist No. 51 (Alexander Hamilton)[8]

---

[7] "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen." U.S. Const. art. I, § 2, cl. 2. "No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen." U.S. Const. art. I, § 3, cl. 3.

[8] "The opinion of the *Federalist* has always been considered as of great authority. It is a complete commentary on our constitution; and is appealed to by all parties in the

16

("To have submitted it to the legislative discretion of the States, would have been improper . . . for the [ ]reason that it would have rendered too dependent on the State governments that branch of the federal government which ought to be dependent on the people alone."). Thus, <u>Thornton</u> does not support finding presidential electors are federal officers.

Finally, the purpose of federal officer removal is not served by finding presidential electors to be federal officers. The purpose of federal officer removal is to protect actions taken on behalf of the federal government from state interference. More specifically, Section 1442 is to protect federal officers from being prosecuted or sued in a State Court for "acting [within the States]" in the "scope of their [federal] authority" when their actions were "warranted by the Federal authority they possess[.]" <u>Tennessee v. Davis</u>, 100 U.S. 257, 263 (1880).

The function of presidential electors does not implicate these federalism and supremacy concerns. Neither the Electors Clause, nor any other constitutional provision, suggests that presidential electors are acting on behalf

_____

questions to which that instrument has given birth." <u>Cohens v. Virginia</u>, 19 U.S. 264, 418 (1821); <u>see also Thornton</u>, 514 U.S. at 806 (stating that the Federalist Papers are "available affirmative evidence indicat[ing] the Framers' intent.").

17

of the United States or are undertaking any action on behalf of the United States. Instead, the Supreme Court has explained, the "[Electors] Clause[] [is an] express delegation[] *of power to the States* to act with respect to federal elections." Thornton, 514 U.S. at 805 (emphasis added). Presidential Electors "*act by authority of the state* that in turn receives its authority from the federal constitution." Ray, 343 U.S. at 224–25 (emphasis added); cf. Moore v. Harper, 600 U.S. 1, 20 (2023) ("[I]n choosing Presidential electors, the Clause 'leaves it to the [State] legislature exclusively to define the method of effecting the object.'") (quoting McPherson, 146 U.S. at 27). Davis's explanation of the rationale for the federal removal statute stands in stark contrast to the source of power and authority vested in presidential electors. Because the electors receive their authority from the states, finding that presidential electors are federal officers would frustrate the purpose of the federal officer removal statute.

In sum, based on the text of the Constitution, the Supreme Court's historical statements and precedents, and the purpose of the federal officer removal statute, the Court determines that presidential electors are not federal officers under Section 1442.

        **b)**      **Still as a Republican nominated presidential elector and contingent electors more generally**

Moreover, the Court's conclusion that Still, as a Republican-nominated presidential elector, was not a federal officer is supported by the fact that at the time of his alleged actions, he was not yet (and indeed never became) a 2020 presidential elector for the State of Georgia. Even assuming that Still was a contingent presidential elector,[9] contingent presidential electors are a creation of *Georgia* state law, not federal law. See O.C.G.A. § 21-2-503(a) (indicating that when election results have been certified, but a judicial contest to that election is pending, the apparent winner is issued a commission contingent on the successful outcome of the final judgment on the contest). There is no federal corollary that provides for contingent presidential electors.

Still cites a 1960 Hawaii case to show that contingent presidential electors are serving as federal officers when they convene and cast ballots. Doc. No. [1], 23. In that case, a Hawaiian trial court held that under state law, the electors for President John F. Kennedy were the duly elected presidential electors resulting

_____

[9]  The Court does not assume that Still was a contingent elector because, as noted above, contingent presidential electors, under Georgia law, are those presidential electors who presumptively won the election, not the electors who presumptively lost the election. O.C.G.A. § 21-5-503.

from the November 1960 Presidential Election and could challenge the election results. DX 5. The Court finds that Lum is not particularly helpful to deciding this case because neither the findings of facts or conclusions of law, in that case, discuss the 1960 Hawaiian Democrat presidential electors' meeting, casting ballots, or transmitting ballots to Congress. DX 5. The findings of fact and conclusions of law do not address the constitutionality of undertaking these actions, or whether the Democrat presidential electors were federal officers.

Accordingly, the Court finds that Still was not a federal officer when operating as a Republican-nominated presidential elector.

### 2.    *Agents of Federal Officers*

The Court also determines that Still has not met his burden in showing that he was acting under a federal officer. Still, alternatively, argues that he was acting under the direction of a federal officer for purposes of Section 1442 removal. The Court rejects this basis for federal jurisdiction. The Eleventh Circuit has propounded a three-part test for determining whether a private individual was "acting under" a federal officer. First, Still "must show that [he] is a person within the meaning of the statute who acted under a federal officer. Caver v. Cent. Ala. Elec. Coop., 845 F.3d 1135, 1142 (11th Cir. 2017) (citing 28 U.S.C. § 1442(a)(1)).

Second, [Still] must show that [he] performed the actions for which [he] is being sued under color of federal office." Id. And third, Still "must raise a colorable federal defense." Id.

"[A] 'private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" Id. at 1143 (quoting Watson v. Phillip Morris Cos., 551 U.S. 142, 152 (2007)). "[T]he private person must help federal officers fulfill a basic governmental task that the government otherwise would have had to perform." Id. (citing Watson, 551 U.S. at 153–54). When a person is "'simply *complying*' with federal law, . . . [he is] '*not*' br[ought] . . . within the scope of § 1442(a)(1)." Id. (quoting Watson, 551 U.S. at 152). "[T]he relationship between the private person and the federal officer must be one of 'subjection, guidance, or control.'" Id. (quoting Watson, 551 U.S. at 151).

In Watson, the Supreme Court held that although the private entity undertook actions pursuant to federal statutes and regulations, the entity was not "acting under" a federal officer pursuant to Section 1442(a)(1). Watson, 551 U.S. at 153. By contrast, in Caver, the Eleventh Circuit held that Central Alabama Electric Cooooperative ("CAEC") was an agent under the Rural Electrification Administration ("REA") and qualified for removal under Section 1442. Caver,

21

845 F.3d at 1143. The Eleventh Circuit reasoned that Congress and the President created the REA, which "exercise[d] extensive supervision over the planning, construction and operation of" CAEC, and the regulatory scheme established the REA's "significant level of control" over CAEC. Id.

Still, through his incorporation by reference, argues that he was "acting under" federal officers for Section 1442 removal because (1) the attorneys for the President and Still directed the Republican-nominated presidential electors' actions, and (2) he assisted the President of the Senate and Archivist in performing their duties under the Electoral Count Act ("ECA"). Doc. No. [1], 8; Shafer, Doc. No. [1], 19–20. The Court considers each argument in turn and ultimately determines that these actions do not establish that Still was acting under a federal officer.

### a)      Acting under private attorneys

With respect to Still acting under the attorneys' directions, the Court finds that these activities were not directed by a federal officer. Still argued that "[a]ttorneys for the President and Shafer specifically instructed Shafer, verbally and in writing, that the Republican elector's meeting and casting their ballots on December 14, 2020 was consistent with counsels' advice." Shafer, Doc. No. [1], 19.

22

Additionally, the Notice of Removal states that the impetus for the Republican-nominated presidential electors' meeting was because President Trump had filed a challenge to the certified election results. Doc. No. [1], 4.

Private litigation is "unofficial conduct" outside of the ambit of the President's exercise of executive power. See Clinton v. Jones, 520 U.S. 681, 701–05 (1997) (concluding that "the federal courts have the power to determine the legality of [the President's] unofficial conduct" because "[t]he litigation of questions that relate entirely to the unofficial conduct of the individual who happens to be the President poses no perceptible risk of misallocation of either judicial power or executive power"). Based on the evidence presented—namely, the email received from the attorneys in question and the transcript of the Republican-nominated presidential electors' meeting—the Court concludes that any acts taken under the guidance of these attorneys were not acts taken under federal officers.

23

Part of the evidence before the Court is an email from the attorneys for the President and Shafer to Shafer himself. Shafer, Doc. No. [1-2][10]; Hearing Tr. 54:15–19. That email was sent from a private attorney from the law firm of Fox Rothschild and copied four other private attorneys. Shafer, Doc. No. [1-2]. Notably, none the attorneys listed on the email have government email addresses, suggesting that they were not acting on behalf of the Department of Justice or the White House Counsel's Office.

The pertinent portion of the email states: "*[b]ased upon the developments both in our state case as well as in the Supreme Court*, I am reconfirming the importance and our collective advice that our slate of delegates meet on December 14th (per the Federal Deadline) and cast their ballots in favor of President Trump and specifically per Georgia Election Code." Shafer, Doc. No. [1-2], 2 (emphasis added). This email thereby directly connects the purpose of the Republican-nominated presidential electors' meeting to President Trump's private litigation. Additionally, the transcript of the Republican-nominated presidential electors'

---

[10] The Court considers this exhibit attached to Shafer's Notice of Removal in Still's removal action because the portion of Shafer's Notice of Removal incorporated by reference by Still cites to this exhibit. See Shafer, Doc. No. [1], 19.

24

meeting shows that this meeting, at least in part, related to private litigation. For example, at the start of the meeting, Shafer stated:

> The President has filed a contest to the certified returns. That contest – is pending. It's not been decided or even heard by any judge with authority to hear it. And so in order to preserve *his rights*, it's important that the Republican nominees for Presidential Elector meet here today and cast their votes.

DX. 3, Tr. 3:7–13 (emphasis added). Later in the meeting, Shafer introduced "a lawyer for President Trump." Id. at 7:15. This lawyer later explained that the meeting was occurring because "the contest of the election in Georgia is ongoing." Id. Tr. 7:17–20.

In order for Still to be acting under the authority of a federal officer, the actions "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Caver, 845 F.3d at 1142–43 (quoting Watson, 551 U.S. at 147). Because the President's private litigation is "unofficial conduct," however, the Court finds that any directives from the attorneys in this private litigation to

25

engage in activities that would benefit the litigation are not related to any federal

officer duties of the President.[11]

        **b)**    **Acting under the President of the Senate and the United States Archivist**

Still, by his incorporation of Shafer's Notice of Removal, also argues that

his actions were taken to assist the President of the Senate and the United States

Archivist. Shafer, Doc. No. [1], 19. The ECA[12] provides the timing requirements

_____

[11]  Additionally, the evidence before the Court is that a private attorney encouraged Still, through Shafer, to meet with the other Republican-nominated presidential electors to "preserve the best chance for Georgia to ultimately support the President's re[-]election." Shafer, Doc. No. [1-2], 2. There is no indication in the email that the President knew of the attorneys' directive or authorized the instructions to the Republican-nominated presidential electors to hold such a meeting. Furthermore, Still was instructed to attend the meeting *by Shafer*, who was instructed *by the private attorneys* for President Trump, who were presumptively directed *by President Trump* that a meeting needed to be held. Shafer, Doc. No. [1-2], DX 3. Thus, in order for the Court to find that Still was "acting under" the President, it would have to find that (1) Shafer was acting under President Trump's private attorneys, (2) the attorneys were themselves acting under the President and (3) both the attorneys and Shafer had the authority to delegate tasks to the Republican-nominated presidential electors. Additionally, as a matter of law, the Court would have to find that the federal officer removal statute applies when the actions occurred pursuant to directions from *two* levels of intermediaries between the defendant and the federal officer. Because the meeting transcript states that these activities were unofficial conduct taken to advance President Trump's and the Trump campaign's bid for reelection the Court declines to determine whether the federal officer removal statute's reach is so long.

[12]  The ECA was amended by Congress in 2022. For purposes of this litigation, the Court will evaluate the Act as it existed prior to January 6, 2021, which was in effect during the time of the activities alleged in the Indictment.

in which states are to submit their electoral ballots to Congress and the United States Archivist. 3 U.S.C. §§ 7, 11, 12 (2021). It also outlines the duties of the United States Archivist and the President of the Senate for receiving and counting the Electoral votes. 3 U.S.C. §§ 6, 15 (2021). Specifically, the Act provides that the Electors shall meet on the first Monday following the second Wednesday in November. 3 U.S.C. § 7 (2021). In this case, the meeting was to be held on December 14, 2020 at the Georgia State Capitol. Id.; O.C.G.A. § 21-2-11. Moreover, the Governor, as soon as practicable after the final ascertainment of the appointed electors, must issue a certificate of ascertainment of appointment of electors, which lists the names of the electors, and transmit the certificates to the United States Archivist and six certificates to each elector. 3 U.S.C. § 6 (2021). Under Georgia law, the presidential electors are elected by popular vote during the November election. O.C.G.A. § 21-2-10.  If the State has made its final determination of any controversy over the election six days before the elector meeting, then those electors are conclusively the electors for the state. 3 U.S.C. § 5 (2021) (the "safe harbor" deadline). In this case, the safe harbor deadline was December 8, 2020.

27

At the meeting of the presidential electors, the electors each sign six certificates of their votes and attach these certificates to their certificates of ascertainment of appointment of electors. 3 U.S.C. § 9 (2021). The presidential electors then transmit their certificates of votes to the President of the Senate, the chief election officer of the State, the Archivist of the United States, and the judge of the district in which the electors have been assembled. 3 U.S.C. § 11 (2021). In Georgia, the certificates would go to the Georgia Secretary of State, the Chief Judge for the Northern District of Georgia, the Archivist of the United States, and the President of the Senate. In the event that the certificates do not reach the President of the Senate or the Archivist by the fourth Wednesday in December, the President of the Senate contacts the Georgia Secretary of State and the Chief Judge for the Northern District of Georgia to transmit the ballots to the U.S. Capitol. 3 U.S.C. §§ 12, 13.

With these aforementioned procedures in mind, it is unclear how the Republican-nominated presidential electors' relationship with these federal officers was one of "subjection, guidance, or control." <u>Caver</u>, 845 F.3d at 1143 (quoting <u>Watson</u>, 551 U.S. at 1151). Certainly, the presidential electors have a duty to meet and submit their certificates to the Archivist of the United States

28

and the President of the Senate. But there is no evidence that the President of the Senate or the Archivist directed the Republican-nominated presidential electors to undertake any activity. In fact, under the federal legislative scheme, if the certificate of votes is not received by the President of the Senate or the Archivist of the United States by a particular date, the statute directs the Georgia Secretary of State and the Chief Judge for the Northern District of Georgia to take action — that is, transmitting copies of the certificates to the U.S. Capitol. 3 U.S.C. §§ 12, 13 (2021). At best, the presidential elector's role is to *comply* with the statutory requirements of the ECA, which is not sufficient to meet the "acting under" requirement. Caver, 845 F.3d at 1143 ("When a person [is] 'simply *complying*' with federal law," they are "'not' br[ought] . . . within the scope of § 1442(a)(1).'" (quoting Watson, 551 U.S. at 152)).

Accordingly, the Court finds that the meeting of the Republican-nominated presidential electors, as contended in this case, is not under the direction of the President of the Senate or the Archivist, but rather constitutes mere compliance with federal statutes. Mere compliance is insufficient to show a non-governmental actor was "acting under" a federal officer for purposes of

29

Section 1442 removal. Accordingly, the Court finds that Still was not "acting under" the President of the Senate or the Archivist for the United States.

\* \* \* \*

In sum, the Court finds that Still failed to adduce sufficient evidence to show that he was acting under the direction of a federal officer. Neither presidential electors, or the Republican-nominated presidential electors in this case, are federal officers. Accordingly, the Court finds that it lacks subject matter jurisdiction over Still's criminal prosecution under Section 1442 because Still was not a federal officer.

### B.   Scope of Office and Colorable Defenses

The Court declines to rule on Still's arguments related to the scope of office and his enumerated colorable defenses. In order for the Court to exercise subject matter jurisdiction under the federal officer removal statute, Still must carry his burden as to all three requirements of Section 1442 — (1) he was a federal officer, (2) acting under the color of his office, and (3) has a colorable federal defense. Caver, 845 F.3d at 1142. Failure to establish any of these requirements is fatal to removal.

Still failed to meet his burden as to the first precondition; therefore, the Court finds that it cannot exercise subject matter jurisdiction over his prosecution. With the evidence currently before the Court, it cannot undertake the "relates to the color of the office" inquiry. Still had the burden of establishing his federal office. Because the Court ruled that Still was not a federal officer and was not acting under a federal officer, the Court cannot determine what federal office, if any, that his actions were taken under.

Additionally, judicial restraint instructs this Court to decline to rule on whether Still has colorable federal defenses. Still may raise these arguments in the State court; thus, the Court declines to rule on them. In short, Still's notice of removal must be remanded for lack of jurisdiction under Section 1442.

## IV.   CONCLUSION

For the foregoing reasons, the Court **REMANDS** the State's criminal prosecution of Shawn Micah Tresher Still under Section 1455 to Fulton County Superior Court. In the light of these holdings, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case.

The Court's conclusion is not to suggest any opinion about the State's case against Still. The Court makes no ruling on the merits of the charges against Still

31

or any defense that he may offer. Still maintains the presumption of innocence and bears no burden of proving that he did not commit the crimes charged against him. The burden of proof beyond a reasonable doubt remains with the State. This Order's sole determination is that there is no federal jurisdiction over the criminal case. The outcome of this case will be for a Fulton County judge and trier of fact to ultimately decide.

**IT IS SO ORDERED** this _29th_ day of September, 2023.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

32

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **STATE OF GEORGIA** | **Case Number:** |
| **v.** | **1:23-cv-03792-SCJ** |
| **SHAWN STILL,** | |
| **Defendant.** | |

## NOTICE OF APPEAL

Notice is hereby given that Defendant Shawn Still appeals to the U.S. Court of Appeals for the Eleventh Circuit from the Order, (ECF No. 31), issued by Judge Steve C. Jones on September 29, 2023, in the above-referenced case.

Respectfully submitted, this 6th day of October, 2023.

*/s/ Thomas D. Bever*
Thomas D. Bever
Georgia Bar No. 055874
W. Cole McFerren
Georgia Bar No. 409248
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree Street, N.E.
Suite 1000
Atlanta, GA 30309
Telephone: (404) 815-3500
tbever@sgrlaw.com
cmcferren@sgrlaw.com

*Counsel for Defendant Shawn Still*

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **STATE OF GEORGIA** | **Case Number:** |
| **v.** | **1:23-cv-03792-SCJ** |
| **SHAWN STILL,** | |
| **Defendant.** | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date set forth below, a true and accurate copy of the foregoing Notice of Appeal was filed electronically with the U.S. District Court for the Northern District of Georgia through the Court's ECF system, which will send notice of this filing to all counsel of record.

This the 6th day of October, 2023.

> */s/ Thomas D. Bever*
> Thomas D. Bever
> Georgia Bar No. 055874
> W. Cole McFerren
> Georgia Bar No. 409248
> SMITH, GAMBRELL & RUSSELL, LLP
> 1105 W. Peachtree Street, N.E.
> Suite 1000
> Atlanta, GA 30309
> Telephone: (404) 815-3500
> tbever@sgrlaw.com
> cmcferren@sgrlaw.com
>
> *Counsel for Defendant Shawn Still*

2